UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JEFF and HARRIET MILLHEISLER,
husband and wife and the marital community
composed thereof,

               Plaintiffs,

     v.

LINCOLN HIGH SCHOOL, and TACOMA
SCHOOL DISTRICT,

               Defendants.

CASE NO. C07-5716RJB

ORDER GRANTING TACOMA
SCHOOL DISTRICT'S MOTION
FOR SUMMARY JUDGMENT

     This matter comes before the Court on Tacoma School District's Motion for Summary Judgment (Dkt. 12). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

     This case arose out of a dispute that Jeffrey Millheisler, a teacher at Lincoln High School, had concerning the teacher evaluation that he received in the 2004-05 school year. Mr. Millheisler is a certificated teacher at Lincoln High School, where he has been teaching Computer Aided Design ("CAD") and CAD related classes for the past seven years. Up until the 2004-05 school year, he had received only positive evaluations.

Lincoln High School is part of the Tacoma School District. The Tacoma School District and the Tacoma Education Association are parties to a collective bargaining agreement. Mr. Millheisler, as a certificated school teacher in the Tacoma School District ("the District"), is subject to the terms of this collective bargaining agreement (the "CBA").

Under the terms of the CBA, teachers are to be evaluated annually. The procedures for teacher evaluations are listed in Article 11 of the CBA. Under the CBA, teacher evaluations include a pre-conference between the evaluator and the teacher, a formal observation, the completion of an observation worksheet, and a post-observation conference between the evaluator and the teacher.

Mr. Millheisler alleges that in February 2005, Ms. Lillian Ebersole, then Vice Principal of Lincoln High School, sent an e-mail to Lincoln High School teachers explaining that she would begin conducting teacher observations in the coming week. Mr. Millheisler claims that he received a pre-observation form marked "high priority" in his staff mailbox on May 5, 2005. Accompanying this form was a note dated May 2, 2008, stating that Ms. Ebersole wanted to observe Mr. Millheisler's third period class on May 6. Mr. Millheisler prepared the pre-observation form as requested.

On May 6, 2005, Ms. Ebersole arrived at Mr. Millheisler's classroom for the observation. Mr. Millheisler contends that neither a pre-conference, nor a post-observation conference took place. Mr. Millheisler also asserts that Ms. Ebersole appeared in his classroom again on May 9 for a formal observation, this time without providing him with any notice. Again, no pre-conference preceded this observation. On May 12, 2005, Ms. Ebersole sent an e-mail message to Mr. Millheisler, which stated, "I've processed your evaluation. Please see me Friday morning during your planning period." Dkt. 28, *Millheisler Decl.*, Ex. R.

On Friday morning, Mr. Millheisler reported to Ms. Ebersole's office during his planning period. At this meeting, Mr. Millheisler read the observation, which contained several recommendations that he considered negative. For example, Ms. Ebersole recommended that Mr. Millheisler "create a safe environment for students to guess"; "review policies on helping

students"; "consider another way of communicating missing assignments"; and "audio or videotape himself interacting with students." Dkt. 28, *Millheisler Decl.*, Ex. F. In her summary, Ms. Ebersole wrote, "I believe that Mr. M is a dedicated teacher with good intentions. He is skilled in his knowledge of drafting and CAD program. However, in his attempt to build problem solving and self-sufficiency skills in his students, he actually alienates them and creates a power struggle." *Id*.

During the meeting, Mr. Millheisler asked Ms. Ebersole if he had received a negative evaluation. Ms. Ebersole told Mr. Millheisler that she had given him a positive evaluation. However, on the evaluation form, Ms. Ebersole concluded, "I believe Mr. Millheisler should be placed on long form evaluation in the upcoming school year." *Id*.

At that time, Mr. Millheisler was being evaluated under Form 2 (short form). Teachers are eligible for short form evaluation only after receiving four years of satisfactory Form 1 (long form) evaluations. In essence, long form evaluation is utilized for newer teachers (those with fewer than 4 years experience), or for teachers who have received unsatisfactory evaluations in previous years.

Mr. Millheisler was "offended and upset" by Ms. Ebersole's evaluation. Dkt. 28, *Millheisler Decl.*, p.3. However, he alleges that he was unable to fully voice his concerns because the meeting had taken up his planning period and threatened to make him late for his next class. Mr. Millheisler signed the evaluation form before leaving to teach his next class.

Mr. Millheisler contends that he made several attempts over the summer of 2005 to obtain administrative or legal advice in regards to his evaluation. He claims that he contacted a representative of the Washington Education Association, who allegedly informed him that nothing could be done because he had received a positive evaluation. Mr. Millheisler also claims that he contacted a member of his union, the Tacoma Education Association, who informed him that there had been no due process violation. Mr. Millheisler claims that he felt he had limited remedies through the grievance procedure as a result of these alleged responses. However, Mr.

1  Millheisler does not allege that he ever read the CBA or familiarized himself with the grievance

2  procedures contained therein.

3      Mr. Millheisler returned to teach at Lincoln High School in the fall.  On October 31, 2005,

4  he received an e-mail from the Principal, Patrick Erwin, stating, "I am placing you on long form

5  evaluation for this school year." Dkt. 28, *Millheisler Decl.*, Ex. G.  Mr. Millheisler alleges that he

6  had intended to use the "professional growth plan" established in the CBA to enhance his

7  marketability as an educator and technical professional.  However, under the terms of the CBA,

8  the professional growth plan is only available to certificated employees who would be scheduled

9  for short form annual evaluation.  Mr. Millheisler responded to Mr. Erwin's e-mail on October 31,

10  and inquired whether the long form designation was punitive in nature.  Mr. Millheisler also

11  asserted that he was entitled to the new professional growth plan process, and he requested that

12  the decision to put him on long form be reconsidered.  Mr. Erwin responded on the evening of

13  October 31, stating that the decision was not a punitive action, but was rather "honoring the

14  conversations you had with Lillian [Ebersole] last year." Dkt. 28, *Millheisler Decl.*, Ex. G.

15      Also during the fall, Mr. Millheisler contacted his union to request that the District remove

16  the two pages of comments that Ms. Ebersole had made in his evaluation the previous year.  The

17  union president, Gayle Nakayama, spoke with the HR director, Paul Apostle, who in turn spoke

18  with Ms. Ebersole.  Ms. Ebersole agreed to this request.

19      Mr. Millheisler claims that on or about December 8, 2005, he had a pre-conference with

20  Mr. Erwin, who would be evaluating Mr. Millheisler's teaching.  In the pre-conference, Mr. Erwin

21  allegedly confirmed that Mr. Millheisler would be evaluated under the long form and would not be

22  eligible for the professional growth plan.  On December 12, 2005, Mr. Erwin observed Mr.

23  Millheisler's class, and a post-conference observation took place the following day.

24      On February 3, 2006, Ms. Nakayama sent Mr. Millheisler an e-mail regarding his request

25  to have the two pages of Ms. Ebersole's comments removed from his personnel file.  In her

26  message, Ms. Nakayama wrote: "Good news!  The last two pages have been removed.  I saw it

27  happen!" Dkt. 28, *Millheisler Decl.*, Ex. H.

28

1    In March of 2006, Mr. Erwin conducted a second pre-conference, observation, and post-

2    observation conference with Mr. Millheisler.  On April 16, 2006, Mr. Erwin completed Mr.

3    Millheisler's long form evaluation.  Mr. Millheisler received satisfactory marks in all areas.

4    However, Mr. Erwin's long form evaluation contained a comment which caused Mr.

5    Millheisler concern.  Mr. Erwin commented, "Mr. Millheisler is more approachable to students

6    while still maintaining the professional feeling in his classroom." Dkt. 28, *Millheisler Decl.*, Ex. I.

7    Mr. Millheisler contends that this comment "clearly referenced" Ms. Ebersole's prior evaluation.

8    *Complaint*, p.5.  Mr. Erwin contends that the comment was not intended to be a comparison to

9    Ms. Ebersole's earlier evaluation.

10    Mr. Millheisler contends that he attempted to work with the union and school

11    administration from April to June of 2006 to clear up the comment Mr. Erwin made on the

12    evaluation form.  On June 2, 2006, Mr. Millheisler filed a formal grievance with the District.

13    In his grievance form, Mr. Millheisler sought the following solutions: 1) retraction of the

14    statement in his 2005-06 evaluation ("Specifically, Mr. Millheisler is more approachable to

15    students while still maintaining the professional feeling in his classroom."); 2) a letter or

16    explanation from Mr. Erwin explaining why Mr. Millheisler was changed to long form without

17    union representation and the right to be heard; and 3) an explanation of why a second post-

18    conference was held.  Dkt. 28, *Millheisler Decl.*, Ex. J.

19    The grievance procedure is outlined in Article 14 of the CBA.  A Level I grievance

20    involves a discussion between the employee and his/her immediate administrator.  Level II

21    grievances are those which were not resolved informally after Level I.  At Level II, the employee

22    must reduce his or her grievance to writing and present it to the immediate administrator.  If a

23    Leval II grievance is not filed within fifty business days of the act or creation of the condition on

24    which the grievance is based, then the grievance is waived.  If the aggrieved employee is not

25    satisfied with the disposition of the grievance at Level II, or if no decision has been rendered with

26    five business days after the presentation of the grievance, then Level III entails filing the grievance

27    in writing with the Superintendent.  Finally, if the aggrieved party is not satisfied with the

28

disposition of the grievance at Level III, the grievant may pursue a Level IV grievance by requesting, in writing to the Tacoma Education Association, that the grievance by submitted to arbitration.

On June 8, 2006, Mr. Erwin sent an e-mail to Mr. Millheisler and Ms. Nakayama. This e-mail stated: "Confirming our earlier conversation: 1) Jeff (Millheisler) is on PGP (Professional Growth Plan) next year. 2) The evaluation done by Lillian Ebersole is shredded and is no longer in your file. 3) I will re-word the summary and provide a copy to Jeff, one for his file (replacing the old one) and one for HR (also replacing the old one)." Dkt. 28, *Millheisler Decl.*, Ex. K.

On June 9, 2006, Ms. Nakayama wrote a letter to Mr. Millheisler which read "upon receipt of the grievance response by Pat Erwin, I would like to say I believe you have achieved everything achievable related to the grievance process." Dkt. 28, *Millheisler Decl.*, Ex. M. Ms. Nakayama reiterated the three courses of action which Mr. Erwin stated he would take in his e-mail of June 8, and she stated that Mr. Erwin had provided an explanation for why a second post-conference had been held.

Ms. Nakayama also advised Mr. Millheisler not to pursue his grievance against Mr. Erwin regarding Mr. Millheisler's being placed on long form evaluation without union representation. Ms. Nakayama explained that "in light of the fact that this particular event occurred outside of the 50-day window for grievance, it would not be a timely grievance at this date." *Id*. She concluded, "I do not recommend you forward any further with the grievance . . . [because] it would . . . be ruled untimely." *Id*.

On June 16, 2006, Ms. Nakayama sent a letter to Ethelda Burke, the Deputy Superintendent of Tacoma School District. In this letter, Ms. Nakayama informed Ms. Burke of "breaches in the evaluation procedure" that occurred when Mr. Millheisler was evaluated by Ms. Ebersole. *Millheisler Decl.*, Ex. L. Ms. Nakayama outlined five contractual requirements that were not followed in the case of Mr. Millheisler. Ms. Nakayama further explained that "given Mr. Millheisler was not aware of then of the 50-day requirement for filing grievances, a grievance was not filed related to these violations." *Id*.

1         Mr. Millheisler alleges that he checked his personnel file on August 27, 2006.  He claims

2    that at this time he was surprised and dismayed to find that Ms. Ebersole's original 2004-05

3    evaluation, and Mr. Erwin's 2005-06 evaluation with the comment "Specifically, Mr. Millheisler is

4    more approachable to students while still maintaining the professional feeling in his classroom"

5    remained in his personnel file.

6         Mr. Millheisler contends that in the fall of 2006, he approached Mr. Erwin and informed

7    him that his evaluations had not be revised as agreed upon through the grievance process.  On

8    September 14, 2006, Mr. Erwin sent an e-mail to HR stating, "Jeff Millheisler shared with me that

9    his 2004-2005 evaluation is still on file down in HR. Jeff, Gayle, and I met last year and agreed

10   last year that there were some procedural irregularities and that the file should be removed. Can

11   you check to see if it is still there and then shred the document." Dkt. 28, *Millheisler Decl.*, Ex.

12   N.

13        On October 31, 2006, Mr. Millheisler alleges that he again checked his personnel file.  He

14   claims that he was again surprised and dismayed to find that both Ms. Ebersole's original 2004-05

15   evaluation, and Mr. Erwin's original 2005-06 evaluations remained in his file unchanged.  Mr.

16   Millheisler does not claim that he took any further immediate action in response to this alleged

17   discovery.

18        Mr. Millheisler further contends that he checked his personnel file again on February 8,

19   2007.  He claims that Ms. Ebersole's and Mr. Erwin's original evaluations both remained

20   unchanged in his file.  He also alleges that two printed e-mails had been placed in his file, and that

21   an unknown individual had made several notations to an addendum that Mr. Millheisler had

22   placed in the file.  Finally, Mr. Millheisler alleges that a new, unsigned document titled "Prioritized

23   Employee Concerns - Lincoln High School" was in his file.  This document summarized the

24   comments to which Mr. Millheisler had objected in Ms. Ebersole's original 2004-05 evaluation.

25   Additionally, this document contained the following language: "Mrs. Ebersole recommended long

26   form due to the negative interactions with students - up to the point where he alienates students

27

28

1 and creates a power struggle.  This is not news as he routinely does this with students and

2 parents." Dkt. 28, *Millheisler Decl.*, Ex. P.

3         Upon making this alleged discovery, Mr. Millheisler did not contact anyone in the union or

4 attempt to invoke the grievance process.  He claims that the District was retaliating against him

5 for his earlier grievance, and that the District had "allowed new retributive and intimidatory

6 material" to be inserted into his personnel file. *Millheisler Decl.*, p.7.  He allegedly concluded that

7 "there was no benefit in continuing with the grievance procedure" because "it was completely

8 futile." *Id*.

9         Mr. Millheisler alleges that on April 9, 2007, Mr. Gil Mendoza, the Executive Director of

10 Career and Technical Education, hand delivered a letter from the District.  This letter, dated

11 March 30, 2007, informed Mr. Millheisler that he had become a displaced staff member.  The

12 letter explained that one possible reason for displacement was reduced enrollment.  Mr.

13 Millheisler was informed that he still had a continuing contract with the school, but that he would

14 have to apply for vacant positions as they were posted.  The letter ended by stating, "If you think

15 there is an error in determining your status, of if you have any questions, please see your building

16 principal.  He or she will contact Human Resources if further information or clarification is

17 needed." *Noble Decl.*, Ex. 6.  Mr. Millheisler also claims that Mr. Mendoza told him that he could

18 return to his job at Lincoln High School if he attended applied math training over the summer.

19         Mr. Millheisler alleges that Mr. Mendoza's "ultimatum aroused suspicions." *Complaint*,

20 p.7.  Mr. Millheisler claims that no one had ever contacted him to inform him that his class

21 numbers were low, and that at the time he received his letter Lincoln High School's master

22 schedule was not yet finalized.  However, Lincoln High School's class counts for Mr. Millheisler's

23 classes show 1041 students for the 2004-05 school year, 947 students for the 2005-06 school

24 year, and 630 students for the 2006-07 school year. *Noble Decl.*, Ex. 7.

25         Mr. Millheisler contends that on May 10, 2007, the Lincoln High School Administration

26 reversed its earlier decision and "undisplaced" him.  Mr. Millheisler felt that circumstances

27 surrounding his displacement were in violation of the CBA.  Therefore,  Mr. Millheisler pursued a

28

1   Level I grievance, and had an informal meeting with Mr. Mendoza and Mr. Koval, the assistant

2   principal to address these concerns.  However, Mr. Millheisler did not pursue his grievance to

3   Level II, explaining in his deposition "The grievance somehow didn't go to Step [Level] II.  I

4   don't know what it is that stopped it." *Deposition of Jeffrey Millheisler*, p.226.

5        Mr. Millheisler alleges that his personnel file still contained procedurally defective

6   documents as of December 12, 2007.  He also claims that the experiences detailed above caused

7   him anxiety, depression, and insomnia.  Mr. Millheisler alleges that he sought treatment from a

8   chirpractor and a massage therapist, and that in November 2006, he sought psychological

9   treatment from Dr. Trenton Williams.  It is the professional opinion of Dr. Williams that "the

10   cause of Mr. Millheisler's depression, anxiety and insomnia stems from, in significant part," Mr.

11   Millheisler's belief that the District had not evaluated him according to procedure, had not

12   rectified the flaws in the evaluation procedure, and had not fixed Mr. Millheisler's personnel file.

13   *Williams Decl.*, p.2.  Dr. Williams also referred Mr. Millheisler to Dr. Nagavedu Raghunath, who

14   prescribed Mr. Millheisler medicine for depression, anxiety and insomnia, and saw him for

15   psychiatric treatment.

16        On December 20, 2007, Mr. Millheisler served and filed, in Superior Court, a Summons

17   and Complaint for Procedural & Substantive 1983 Claim Deprivation of Property; Procedural &

18   Substantive 1930 Claim Deprivation of Liberty; Negligence; Outrage; Negligent Infliction of

19   Emotional Distress upon Defendant Tacoma School District.  Mr. Millheisler named Lincoln High

20   School and Tacoma School District as defendants in this Complaint.  On December 28, 2007, the

21   Tacoma School District removed Plaintiff's case to this court.

22        On August 14, 2008, the Tacoma School District filed its Motion for Summary Judgment

23   (Dkt 12) with a request for oral argument.  Plaintiff Jeff Millheisler filed his response (Dkt. 27) on

24   September 8, 2008, and Tacoma School District filed its reply (Dkt. 29) on September 12, 2008.

25   Because the motion is suitable for disposition without oral argument, Defendant Tacoma School

26   District's request for oral argument is denied.

27

28

## II. DISCUSSION

Defendant Tacoma School District now moves for summary judgment on the grounds that Mr. Millheisler failed to exhaust the grievance procedure in the collective bargaining agreement, that the District is not subject to liability under 42 U.S.C. § 1983; that Mr. Millheisler fails to state a claim for deprivation of property, deprivation of liberty, or denial of substantive due process; and that Mr. Millheisler's state claims are without merit. Dkt. 12.

### A.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will

1  discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

2  to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

3  Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be

4  presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

5  **B.    FAILURE TO EXHAUST**

6         The first issue is whether Mr. Millheisler's claims are barred because he failed to pursue

7  his remedies under the collective bargaining agreement's grievance procedure.  Generally, federal

8  labor policy requires employees who allege violations of a labor contract to attempt to use the

9  contract's grievance procedure before seeking a judicial remedy.  *Ervin v. Columbia Distributing,*

10 *Inc.*, 84 Wn. App. 882, 887 (1997)**,** *citing Republic Steel Corp. v. Maddox*,        379 U.S. 650,

11 652-53, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). Similarly, under Washington law, an action to

12 obtain the benefits of a collective bargaining agreement cannot be maintained if a plaintiff does not

13 exhaust his or her contractual remedies through the grievance procedure provided for in the

14 contract.  *Moran v. Stowell*, 45 Wn. App. 70, 75 (1986).  Federal and state law are consistent in

15 regards to exhaustion.  The exhaustion requirement applies only to employees "who allege

16 violation of a labor contract." *See Ervin*, 84 Wn. App. at 887; *Wilson v. City of Monroe*, 88 Wn.

17 App. 113, 115 (1997).

18     However, exhaustion of remedies under a collective bargaining agreement is not required

19 if resort to the agreement's grievance procedure would be futile.  *Moran*, 45 Wn. App. at 71.

20 Also, if the aggrieved party had no notice of the administrative decision or no opportunity to use

21

22 the administrative review procedures, then the failure to exhaust is excused.  *Id.*

23     Mr. Millheisler does not dispute that he failed to exhaust his remedies under the collective

24 bargaining agreement.  At no point did Mr. Millheisler pursue any grievance beyond Level II.

25 However, Mr. Millheisler argues that his failure to attempt to exhaust his remedies under the

26 collective bargaining agreement should be excused because any such attempt would have been

27 futile.

28

The factual circumstances of a case rarely justify a finding of futility. *Grandmaster Sheng-Yen Lu v. King County*, 110 Wn. App. 92, 110 (2002); *Dils v. Dept. of Labor & Industries*, 51 Wn. App. 216, 219 (1988). Generally, futility stems from a showing of bias or prejudice on the part of the discretionary decisionmakers. *Baldwin v. Sisters of Providence in Washington, Inc.*, 112 Wn.2d 127, 131 (1989). Moreover, the policies underlying exhaustion impose a substantial burden on a litigant to show futility. *Grandmaster Sheng-Yen Lu*, 110 Wn. App. at 110.

An individual's subjective belief that available grievance procedures would be futile is generally insufficient to invoke the futility exception to the exhaustion requirement. *See Baldwin*, 112 Wn.2d at 133 ("the principle that a subjective belief of futility is sufficient to invoke the exception would conflict with a strong bias toward requiring exhaustion in Washington"); *Dils*, 51 Wn. App. at 219 ("even remedies Dils thought to be unavailing should have been pursued"). Moreover, a claimant's dissatisfaction with an agency's alleged delays does not excuse the claimant's failure to exhaust his administrative remedies. *Dils*, 51 Wn. App. at 220.

Plaintiff argues that summary judgment must be denied because the District has not pointed to any facts showing the absence of evidence on the issue of futility. In a motion for summary judgment, the moving party has the burden of showing that there are no issues of fact with respect to the possible futility of the non-moving party's efforts to exhaust contractual remedies. *Baldwin*, 112 Wn.2d at 131. This may be accomplished by pointing to specific pleadings, affidavits, or depositions showing the absence of evidence on the issue of futility. *Id.* Here, the Tacoma School District has consistently pointed out in its pleadings that Mr. Millheisler lacks any evidence of alleged futility in the grievance process. Moreover, the Tacoma School District has submitted evidence that it is the policy and practice of the District to follow and

comply with the terms of the collective bargaining agreement. *Schreurs Decl.*, p.2. In contrast, Plaintiff has offered no evidence of futility beyond the allegations contained in his pleadings.

Mr. Millheisler alleges that pursuing the grievance process would have been futile because the process produced agreements that the District "did not respect and still does not respect." *Plaintiff Millheisler's Response to Defendant's Motion for Summary Judgment*, p.10. He further argues that the grievance procedure "produces nothing but inaction and indifference to previous agreements." *Id.* at 11. However, Plaintiff's belief that the pursuing the available grievance procedures would have been futile appears entirely subjective; he offers no objective evidence of futility.

In the briefing, Plaintiff first directs the Court to *Bonser v. Safeway, Inc.*, 809 F.Supp. 799 (D.Colo. 1992), a case from the United States District Court for the District of Colorado. First, it should be noted that *Bonser* is not binding authority on this Court. Next, the facts of *Bonser* and the present case are highly dissimilar. *Bonser*, unlike the present case, focuses on an alleged violation of a settlement. Although Plainitiff argues that the *Bonser* court "agreed with Employee's futility argument," the Court in *Bonser* ultimately granted the defendant's motion for summary judgment, and the case does not support Plaintiff's futility argument.

Plaintiff also requests that the Court consider *Baldwin*, 112 Wn.2d 127, in deciding the issue of futility. In *Baldwin,* the plaintiff's argument was premised largely upon his subjective belief that the grievance process would have been futile. The *Baldwin* Court observed that "the principle that a subjective belief of futility is sufficient to invoke the exception would conflict with a strong bias toward requiring exhaustion in Washington." *Id.* at 133. However, the Court then noted that *in addition* to the plaintiff's subjective belief of futility, evidence also indicated (1) a close working relationship between the administrator and the assistant administrator, (2) a

situation where the first three persons in the grievance process were actively involved in the decision to fire the plaintiff, and (3) a particularly inflammatory and sensitive incident which resulted in plaintiff's termination. *Id. Baldwin* stands for the proposition that a claimant's subjective belief of futility alone is insufficient to invoke the futility exception. Accordingly, Mr. Millheisler can not rely on *Baldwin* to excuse his failure to exhaust.

It is also hard to argue that taking a grievance to the superintendent, or to arbitration, is futile, when Plaintiff has not tried those avenues of relief. Mr. Millheisler has failed to raise a material issue of fact as to the futility of pursuing the grievance process under the CBA. Because it is undisputed that Mr. Millheisler failed to exhaust his remedies under the CBA, he may only pursue claims based on violations not covered by the CBA.

## C. CONSTITUTIONAL CLAIMS

Plaintiff's first and second causes of action are procedural and substantive due process claims under Section 1983. Section 1983 is a procedural device for enforcing constitutional provisions and federal statutes; the section does not create or afford substantive rights. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). In order to state a claim under 42 U.S.C. § 1983, plaintiffs must demonstrate that (l) the conduct complained of was committed by a person acting under color of law and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or by the laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986). Section 1983 is the appropriate remedy only if both elements are satisfied. *Haygood v. Younger,* 769 F.2d 1350, 1354 (9th Cir. 1985). In addition, plaintiffs must allege facts demonstrating that individual defendants caused, or personally participated in causing, the alleged harm. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). A defendant cannot be held liable under 42 U.S.C. § 1983 solely

on the basis of supervisory responsibility or position. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 n.58 (1978).

### 1.    Procedural Due Process

The Fourteenth Amendment protects individuals from the deprivation of property without due process of law.  There are three elements for procedural due process claims under Section 1983:(1) a property interest protected by the Constitution; (2) a deprivation of that interest by the government; and (3) a lack of process. *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).  A public employer may meet its due process obligations by providing a collective bargaining agreement if that agreement contains grievance procedures that satisfy due process. *Armstrong v. Meyers*, 964 F.2d 948, 950 (9th Cir.1992).

A government employee has a constitutionally protected property interest in continued employment when the employee has a legitimate claim of entitlement to the job.  *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).  Laws, rules, or understandings derived from independent sources, such as state law, create such claims of entitlement.  *Id*.  A mere expectation that employment will continue does not create a property interest.  *Id*.  If under state law, employment is at-will, then the claimant has no property interest in the job.  *Id*.

### 2.    Substantive Due Process

The Fourteenth Amendment's Due Process Clause "cover[s] a substantive sphere, . . . barring certain government actions regardless of the fairness of the procedures used to implement them." *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998).  This substantive component protects individuals from "the exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Id*. at 846; *see Engquist v. Oregon Dept. of Agriculture*, 478 F.3d 985, 996-97 (2007) (noting that "most courts have rejected the claim that substantive

due process protects the right to a particular public employment position" and recognizing a substantive due process claim for a public employer's violations of occupational liberty limited to extreme cases, such as blacklisting).

### 3.    Liability of School Districts Under Section 1983

The language of Section 1983 is expansive and does not expressly incorporate common law immunities. *Owen v. City of Independence, Mo.*, 445 U.S. 622, 637 (1980). Municipalities and other local governing bodies, such as school districts, are subject to suit under Section 1983. *Monell v. Department of Social Servs.*, 436 U.S. 658, 690 (1978); *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004). Municipalities are not liable merely for employing tortfeasors, and respondeat superior is an insufficient basis for establishing municipal liability. *Monell*, 436 U.S. at 690. Rather, plaintiffs must establish that a policy or custom of the municipality caused the constitutional injury. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination*, 507 U.S. 163, 166 (1993). This requirement distinguishes acts of the municipality from acts of municipal employees. *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999).

If an employee commits a constitutional violation pursuant to a longstanding practice or custom, the custom allegedly causing the rights violation need not receive municipal ratification in order to serve as the basis for a claim under Section 1983. *Monell*, 436 U.S. at 691. Plaintiffs contending that they were singled out for unconstitutional treatment must establish the presence of a longstanding practice or custom or must demonstrate that the person causing the violation has final policymaking authority, that the final policymaker ratified the rights violation, or that the final policymaker acted with deliberate indifference to a subordinate's constitutional violations. *Christie*, 176 F.3d at 1235.

### 4.    Plaintiff's First Cause of Action

Plaintiff's first cause of action is a procedural and substantive Section 1983 claim for deprivation of property. Specifically, Mr. Millheisler claims that he has a property interest in his career, the characteristics of his career, and his relationship to his career.

Mr. Millheisler contends that Ms. Ebersole's acts and omissions in her evaluation of Mr. Millheisler denigrated his property interest in his career, the characteristics of his career, and his relationship to his career, thereby depriving him of property without due process of law. Mr. Millheisler makes similar assertions in regards to Mr. Erwin's evaluation of Mr. Millheisler, his agreement to rectify procedurally defective evaluations and his alleged subsequent failure to do so. Additionally, Mr. Millheisler argues that Lincoln High School and the Tacoma School District deprived him of property without due process of law by displacing him and subsequently "undisplacing" him without regard for procedure. Finally, Mr. Millheisler contends that the acts of Ms. Ebersole, Mr. Erwin, Lincoln High School, and the Tacoma School District were arbitrary and capricious, and therefore violated Mr. Millheisler's right to substantive due process.

Mr. Millheisler's claims arise from alleged violations of contractual rights arising from the CBA. Ms. Ebersole's alleged failure to adhere to procedural requirements in her evaluations, Mr. Erwin's alleged violations in regards to Mr. Millheisler's evaluations and personnel file, and Lincoln High School and the Tacoma School District's alleged violations in regards to Mr. Millheisler's temporary displacement are all examples of conduct subject to grievance under the CBA. Because Mr. Millheisler failed to exhaust his remedies under the CBA, his procedural and substantive Section 1983 claim for deprivation of property is barred.

Even if Mr. Millheisler's first cause of action was not barred for failure to exhaust, his Section 1983 deprivation of property claim lacks merit. Plaintiff has failed to show that any deprivation of a property interest actually occurred. Mr. Millheisler was not terminated, nor was

his salary ever reduced as a result of defendants' alleged conduct. The employment difficulties and issues Plaintiff describes do not rise to the level of a protected property interest.

Mr. Millheisler contends that because certificated teachers are not distinguished from each other by rank or title, one of the only ways to indicate objective rank is being allowed on PGP. *Millheisler Dec.* ¶12. Therefore, Mr. Millheisler asserts his not being placed on PGP for one year was "tantamount to a demotion, denying a promotion, and/or denigrating Mr. Millheisler's employment rank and status." Dkt. 27 at p.20. However, Plaintiff has failed to provide any authority supporting this contention, nor has he provided any evidence that this contention amounts to anything more than his subjective belief.

Finally, Mr. Millheisler contends that the offending material in his personnel file could impede his future career development within or outside the District. In effect, Plaintiff argues that Defendants' conduct may possibly result in a future deprivation of some property interest. However, plaintiffs can not bring suit for deprivations of property that have not yet occurred. Because Plaintiff has failed to show a deprivation of a property interest, an analysis of school district liability and official "policy or custom" is not necessary. Plaintiff has failed to exhaust his remedies under the CBA, and he has failed to show that he has been deprived of any property interest. Therefore, Plaintiff's first cause of action should be dismissed.

**5.    Plaintiff's Second Cause of Action**

Mr. Millheisler's second cause of action is a procedural and substantive Section 1983 claim for deprivation of liberty. Specifically, Mr. Millheisler asserts that he has a liberty interest in his good name, reputation, and honor and integrity. Plaintiff argues that the aforementioned acts and omissions of defendants and their agents denigrated his liberty interest in his good name, reputation, and honor and integrity, thereby depriving him of liberty without due process of law.

Again, Mr. Millheisler's claims arise from alleged violations of contractual rights arising from the CBA. Because Mr. Millheisler failed to exhaust his remedies under the CBA, his procedural and substantive Section 1983 claim for deprivation of liberty is barred.

Aside from being procedurally barred for failure to exhaust, Plaintiff's deprivation of liberty claim lacks merit. Generally, due process protections are triggered when a public employee is terminated and stigmatizing charges are published. *Mustafa v. Clark County School District*, 157 F.3d 1169, 1179 (9th Cir. 1998). To take advantage of these due process protections, an employee must show that 1) the accuracy of the charge is contested; 2) there is some public disclosure of the charges; and 3) the charge is made in connection with termination of the employment. *Id*. Additionally, harm to reputation alone is insufficient to implicate an individual's liberty interest. *Id*.

Here, Mr. Millheisler was not terminated. Because Mr. Millheisler was not terminated and he has not provided any evidence of publication of stigmatizing charges or harm to his reputation, his second cause of action should also be dismissed on that ground.

## D.    STATE CLAIMS

In addition to asserting claims for violation of his constitutional rights, Mr. Millheisler asserts state claims of negligence, outrage, negligent infliction of emotional distress, and negligent misrepresentation. The District seeks summary judgment, contending that there are no genuine issues of material fact as to any of these state claims.

### 1.    Plaintiff's Third Cause of Action

Plaintiff's third cause of action is a state claim of negligence. Plaintiff asserts that Lincoln High School ("Lincoln") owes its teachers various duties related to teacher evaluations. For

example, Plaintiff contends that Lincoln has a duty to its teachers "to execute a meaningful, helpful and objective evaluation system." *Complaint*, p.11.

Mr. Millheisler alleges that Lincoln breached this duty by ignoring pre-conference and post-conference requirements, fraudulently filling in dates for events that did not occur, giving teacher evaluations without notice, providing misinformation, and failing to remedy acknowledged errors and omissions. Mr. Millheisler further asserts that these alleged breaches were the actual and proximate cause of his damages, which he describes as including vocational damage, loss of enjoyment of career, reputation damage, medical costs, anxiety and depression, and attorneys fees and costs.

Once again, the alleged negligence consists of conduct covered by the grievance process of the CBA. Therefore, Plaintiff's negligence claim is barred for failure to exhaust the available remedies under the CBA.

Even if Plaintiff's negligence claim were not barred for failure to exhaust, Plaintiff has still failed to raise a genuine issue of material fact as to this claim. To support a claim for negligence, a party must prove (1) the existence of a duty owed to the injured party; (2) a breach of that duty; (3) a resulting injury; and (4) that the claimed breach is the proximate cause of the injury. *Hansen v. Friend*, 118 Wn.2d 476, 485 (1992). The existence of a duty is a question of law. *Synder v. Medical Service Corp.*, 145 Wn.2d 233, 243 (2001).

Generally, a breach of contract (e.g. a collective bargaining agreement) does not give rise to an action in tort. *American Nursery Prods., Inc. v. Indian Wells Orchards*, 115 Wn.2d 217, 230 (1990). Only "if a duty exists independently of the performance of the contract" can a contract provide the basis for a tort claim. *Id.*

ORDER - 20

Here, Plaintiff argues that sections of RCW 28A.405 and various state regulations give rise to an independent duty for the Tacoma School District to evaluate certificated teachers fairly, take responsibility for the evaluations' outcomes, and manage personnel files. *Plaintiff Millheisler's Response to Defendant's Motion for Summary Judgment*, p.12. However, Plaintiff can point to no authority that establishes such a duty. Although Plaintiff does not explicitly state so, it appears that he is arguing for the extension of existing law, or the creation of new law. Plaintiff invites the Court to interpret RCW 28A.405.100 as imposing civil liability on evaluators and entities that fail to follow statutory guidelines.

Specifically, Plaintiff points to the following language in RCW 28A.405.100:

> During the probationary period the evaluator shall meet with the employee at least twice to supervise and make a written evaluation of the progress, if any, made by the employee. The evaluator may authorize one additional certificated employee to evaluate the probationer and to aid the employee in improving his or her areas of deficiency; such additional certificated employee shall be immune from any civil liability that might otherwise be incurred or imposed with regard to the good faith performance of such evaluation.

RCW 28A.405.100.

It is not clear that the legislature envisioned civil liability for school districts that do not comply with the evaluation guidelines set forth in RCW 28A.405.100. The statutory language cited above is the only reference to any type of liability found anywhere in RCW 28A.405. Additionally, the language cited above appears limited to the evaluation of employees placed on probation for unsatisfactory work.

None of the authority cited by Plaintiff provides that school districts shall be civilly liable to teachers for errors in the evaluation procedure. Furthermore, a review of the legislative history of RCW 28.405 shows no discussion on civil liability for school districts. There are no

Washington cases that have held a school district liable for errors in employee evaluations. The only passing mention of civil liability in the statute and regulations cited by Plaintiff appears limited to good faith evaluations of teachers placed on probation for unsatisfactory work. The Court declines Plaintiff's invitation to interpret ambiguous statutory language to impose sweeping liability on school districts that fail to strictly comply with RCW 28.405.100's evaluation criteria. Accordingly, Plaintiff's negligence claim should also be dismissed for that reason.

### 2.    Plaintiff's Fourth Cause of Action

Plaintiff's fourth cause of action is for outrage, also known as intentional infliction of emotional distress. Again, the events underlying this claim arose from conduct covered by the CBA, so Plaintiff's claim is barred for failure to exhaust.

The events underlying Plaintiff's claim, viewed in a light most favorable to the Plaintiff, do not create a genuine issue of material fact as to intentional infliction of emotional distress. Intentional infliction of emotional distress requires proof of three elements: (1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) severe emotional distress to the plaintiff. *Kloepfel v. Bokor*, 149 Wn.2d 192, 195 (2003). The tort of outrage does not encompass mere insults, indignities, threats, or annoyances. *Id*. at 196. A plaintiff is assumed to be "hardened to a certain degree of rough language, unkindness, and lack of consideration." *Id*.

The offending conduct must be "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*. at 196. Whether particular conduct rises to the requisite level of outrageousness is "ordinarily a question of fact for the jury." *Dombrosky v. Farmers Ins. Co. of*

*Washington*, 84 Wn. App. 245, 261 (1996). The Court, however, may dismiss a claim if reasonable minds could not differ as to whether the alleged conduct was sufficiently extreme. *See id.* at 261-62.

The facts underlying this claim are the alleged errors in the evaluation procedure, Lincoln High School's alleged refusal to remedy these errors, and Plaintiff's displacement and subsequent "undisplacement." Such conduct is not "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Kloepfel*, 149 Wn.2d at 196. Therefore, Plaintiff's outrage claim should be dismissed.

**3.      Plaintiff's Fifth Cause of Action**

Plaintiff's fifth cause of action, which he also failed to exhaust under the CBA, is for negligent infliction of emotional distress. In Washington, the tort of negligent infliction of emotional distress requires a showing that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, (3) the breach is a proximate cause of damages, and (4) damages did indeed result. *Snyder*, 145 Wn.2d at 243.

Whether there is a duty owed is a question of law that "depends on mixed considerations of 'logic, common sense, justice, policy, and precedent.'" *Keates v. Vancouver*, 73 Wn. App. 257, 265 (1994). In the employment context, employers are under no duty to provide a workplace free of stress. *Snyder*, 145 Wn.2d at 243.

The Washington Supreme Court recognizes that some wrongful acts do not result in legal liability and that "mental distress is a fact of life." *Hunsley v. Giard*, 87 Wn.2d 424, 435 (1976). Perhaps for this reason, Washington courts have been reluctant to find a duty to act reasonably

when responding to disputes. *Bishop v. State*, 77 Wn. App. 228, 234-35 (1995) ("Therefore, we hold that absent a statutory or public policy mandate, employers do not owe employees a duty to use reasonable care to avoid the inadvertent infliction of emotional distress when responding to workplace disputes.").

Plaintiff argues that there is a clear statutory and public policy mandate governing teacher evaluation procedures, and that this mandate imposes a duty to use reasonable care. As support, Plaintiff cites to RCW 28A.405 and the various state regulations cited for his negligence claim. Again, Plaintiff fails to cite, and the Court's research has not revealed, authority articulating or supporting the theory that school districts owe their teachers a duty to use reasonable care in the evaluation process and that a breach of such duty would result in civil liability. Plaintiff's negligent infliction of emotional distress claim is not only barred for failure to exhaust, but the theory underlying his claim is also unsupported by the law. Therefore, Plaintiff's fifth cause of action should also be dismissed for that reason.

4.      **Plaintiff's Sixth Cause of Action**

Plaintiff's final cause of action is a state claim of negligent misrepresentation. This claim is premised on the representations that Plaintiff alleges that Lincoln High School made regarding his evaluations. Again, this alleged misconduct is covered by the grievance process of the CBA, and Plaintiff's claim is barred for failure to exhaust.

Additionally, Plaintiff has failed to state a *prima facie* case for his negligent misrepresentation claim. Washington has adopted the elements of negligent misrepresentation set forth by the Restatement (Second) of Torts: "One who, in the course of business, profession, or employment, . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance

upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." *Van Dinter v. Orr*, 157 Wn.2d 329, 332 (2006).

In other words, to establish a claim for negligent misrepresentation, a plaintiff must show that the defendant negligently supplied false information the defendant knew, or should have known, would guide the plaintiff in making a business decision, and that the plaintiff justifiably relied on the false information. *Id*. at 333. Additionally, the plaintiff must show that the false information was the proximate cause of the claimed damages. *Id*. The proof of such a claim must be clear, cogent, and convincing. *Id*.

Here, Plaintiff has failed to show how the allegedly false information guided him in any business transaction. Additionally, he has failed to show that he suffered any pecuniary loss as a result of his reliance on the allegedly false information. Because Plaintiff failed to exhaust his remedies under the CBA, and because he has failed to state a *prima facie* case, his negligent misrepresentation claim should be dismissed.

### III. ORDER

Therefore, it is hereby

**ORDERED** that Tacoma School District's Motion for Summary Judgment (Dkt 12) is **GRANTED**, and this case is **DISMISSED**.

DATED this 24th day of September, 2008.

Robert J Bryan
United States District Judge